IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTIN EDWARD JARAMILLO,

    Plaintiff,

v.                                                                         No. 1:16-cv-00428 SCY

NANCY A. BERRYHILL,[1]
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Martin Edward Jaramillo's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff period of disability and disability insurance benefits. Doc. 19. The Court concludes that the ALJ erred in her consideration of the medical opinions of Plaintiff's consultative examining and non-examining psychologists. Therefore, the Court will **grant** Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.    BACKGROUND**

Plaintiff applied for period of disability and disability insurance benefits on February 8, 2012. Administrative Record ("AR") 24. He alleged a disability onset date of February 28, 2008. *Id*. After his claim was denied on initial review and upon reconsideration, his case was set for a hearing in front of an ALJ on July 15, 2014. *Id.*

On August 15, 2014, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. AR 24-34. In arriving at her decision, the

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of the Social Security Administration, is substituted for Acting Commissioner Carolyn W. Colvin under Rule 25(d) of the Federal Rules of Civil Procedure.

ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of February 28, 2008 through his last insured date of September 30, 2013. AR 26-27. The ALJ then found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) polysubstance abuse; (3) a substance induced mood disorder; (4) an impulse control disorder; (5) posttraumatic stress disorder (PTSD); (6) a learning disorder, not otherwise specified; (7) an antisocial personality disorder with narcissistic and paranoid traits; and (8) stuttering (psychologic). AR 27. The ALJ, however, found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 27-29.

Because she found that Plaintiff's impairments did not meet a Listing, the ALJ then went on to assess Plaintiff's residual functional capacity ("RFC"). AR 29. The ALJ stated that

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl; should have no interaction with the general public; and the claimant is limited to only occasional and superficial interactions with coworkers.

AR 29. The ALJ concluded that Plaintiff was unable to perform any past relevant work through the date last insured. AR 33. Based on the testimony of a vocational expert, the ALJ then determined at step five that through the date last insured, considering Plaintiff's age, education, work experience, and his RFC, there were jobs that existed in significant numbers in the national economy that he could have performed. AR 33-34.

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council and the Appeals Council denied the request for review. AR 1. This appeal followed. Doc. 19.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III. ANALYSIS

Plaintiff challenges the ALJ's decision on a number of grounds: (1) the ALJ committed reversible legal error in formulating Plaintiff's RFC; (2) the RFC errors tainted the vocational expert's testimony; (3) the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony; and (4) the Appeals Council improperly refused to admit and consider new evidence regarding Plaintiff's impairments. Doc. 19 at 4. The Court focuses its attention on Plaintiff's arguments concerning the ALJ's RFC determination, and in particular, on Plaintiff's contention that the ALJ failed to properly evaluate the medical opinions of consultative examining psychologist, Dr. Paula Hughson, M.D., and non-examining agency psychologist, Dr. Susan Daugherty, Ph.D. *See* Doc. 19 at 17-20.

An ALJ must evaluate and weigh every medical opinion in the record, regardless of its source. *See* 20 C.F.R. § 404.1527(c). Medical opinions are:

> statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.

*Id.* at § 404.1527(a)(1). The regulations require an ALJ to consider several specific factors in weighing a medical opinion. *Id.* at § 404.1527(c). These factors include the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors which tend to support or contradict the opinion. *Id.* "[A]s the regulations governing medical opinions recognize, an examining medical-source opinion . . . is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

"The record must demonstrate that the ALJ considered all of the evidence," but there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569,

5

576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Although the ALJ is not required to discuss every piece of evidence, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *See Wall v. Astrue*, 561 F.3d 1048, 1074-75 (10th Cir. 2009) (quoting *Clifton*, 79 F.3d at 1009-10). The ALJ is required "to provide specific, legitimate reasons if he decide[s] to discount or dismiss an opinion from an acceptable medical source, and to explain the weight given to opinions from [other medical] sources, or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *See Harrold v. Berryhill*, 2017 WL 4924662, at *2 (10th Cir. Oct. 31, 2017) (internal citations and quotation marks omitted).

Plaintiff argues that the ALJ failed to comply with these legal standards in evaluating the medical source opinions in the record regarding Plaintiff's mental impairments. For the reasons discussed below, the Court agrees.

**A. Dr. Hughson**

Dr. Paula Hughson, M.D., performed a consultative psychiatric examination of Plaintiff on September 11, 2012. AR 478-84. In her examination report, Dr. Hughson diagnosed Plaintiff with "Mood Disorder, at least in part Substance Induced, possibly secondary to TBI", "Impulse Control Disorder, NOS", "Post Traumatic Stress Disorder", "Learning Disorder NOS", opiate and cannabis dependence. AR 481. She assessed a Global Assessment of Functioning (GAF) score of 45-48, indicating that she believed Plaintiff had major mental symptoms and

impairments. *Id*. Based on her examination, Dr. Hughson assessed Plaintiff as having marked limitations in his ability to:

      (1) understand and remember detailed or complex instructions;
      (2) interact with the public;
      (3) interact with coworkers; and
      (4) interact with supervisors.

AR 483. Dr. Hughson also assessed Plaintiff as being moderately limited in his ability to:

      (1) carry out instructions;
      (2) attend and concentrate;
      (3) work without supervision;
      (4) adapt to changes in the workplace; and
      (5) use public transportation or travel to unfamiliar places.

*Id*. Lastly, Dr. Hughson found that Plaintiff was mildly limited in his ability to understand and remember very short and simple instructions. *Id*.

      In her review of Dr. Hughson's consultative examination, the ALJ initially noted that Dr. Hughson had assessed the above limitations. AR 32. The ALJ, however, found that Dr. Hughson's opinion was "vague, in that it provides no quantifiable work related limitations." *Id*. The ALJ stated that she had nevertheless considered Dr. Hughson's opinion in formulating Plaintiff's RFC and "imposed limitations with regard to social interactions."[2] *Id*. The ALJ concluded that she afforded "partial weight" to Dr. Hughson's opinion to the extent it was consistent with Plaintiff's RFC. AR 32.

      Upon review of the ALJ's decision, the Court determines that the ALJ's consideration of Dr. Hughson's opinion is legally insufficient for a number of reasons. First, the ALJ failed to adequately explain her reasons for giving only partial weight to Dr. Hughson's opinion—an

---

[2] As indicated earlier, Plaintiff's RFC included the following limitations regarding social interactions: that Plaintiff have no interaction with the general public and only occasional and superficial interactions with coworkers. AR 29.

opinion that the ALJ did not indicate was controverted by other medical evidence in the record. It is well-established that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Here, the ALJ adopted some of the marked limitations found by Dr. Hughson in formulating Plaintiff's RFC – namely, the impairments concerning Plaintiff's interaction with the public and coworkers – but did not otherwise address the remaining marked and moderate limitations assessed by Dr. Hughson. The ALJ should have, but failed to, explain her reasons for rejecting these remaining limitations. Moreover, even as to the limitations that the ALJ did adopt, the ALJ failed to indicate why she was incorporating into the RFC only two of the three marked limitations Dr. Hughson found in the area of social interactions. That is, the ALJ provided no explanation as to why she adopted Dr. Hughson's findings that Plaintiff was markedly limited in his interaction with coworkers and the public, but not Dr. Hughson's finding that Plaintiff was also markedly limited in his ability to interact with supervisors. The ALJ's failure to explain her reasons for rejecting some portions of Dr. Hughson's opinion, while accepting others, is erroneous. *See, e.g., Harrold*, 2017 WL 4924662, at *3 (finding that the "ALJ's failure to evaluate and weigh Dr. LaGrand's opinion in full, and to explain his reasons for rejecting portions of her opinion while apparently accepting other portions, was therefore error under the law of this circuit and relevant Social Security regulations.").

In addition, the primary reason the ALJ provided for giving partial weight to Dr. Hughson's opinion was that the opinion is "vague, in that it provides no quantifiable work related limitations." AR 32. Dr. Hughson, however, assessed work-related functional mental limitations and further indicated whether these limitations were mild, moderate, or marked in

8

nature. In fact, the ALJ herself acknowledged Dr. Hughson's assessment of these limitations. AR 32 (observing that "Dr. Hughson opined that the claimant has marked limitations with regard to social interactions and in his ability to understand and remember detailed or complex instructions. She further opined that the claimant has mild, moderate, or no limitations with regard to the rest of his mental functioning."). The functional limitations Dr. Hughson assessed are consistent with Social Security regulations and Tenth Circuit case law defining work-related mental limitations. *See, e.g.*, SSR 96-8P, 1996 WL 374184, *6 (July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); *Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (stating that examples of work-related mental functions include the "abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."). Thus, the record does not support the reason the ALJ gave for assigning partial weight to Dr. Hughson's opinion.

Defendant's additional arguments in defense of the ALJ's treatment of Dr. Hughson's opinion are also unpersuasive. For instance, Defendant argues that Dr. Hughson's opinion tracked only Section I of an agency-issued form used to evaluate a claimant's mental impairments and thus, Dr. Hughson "did not ultimately say what Plaintiff's mental residual functional capacity was." Doc. 23 at 15-16. The Court does not address the merits of this argument because its premise, that Dr. Hughson used an agency-issued form, is incorrect. *See Harrold*, 2017 WL 4924662, at *3 n.6 (declining to address the Commissioner's argument

regarding Section III of agency-issued form because the state agency psychologists did not use that form "in assessing and recording their opinions of [the claimant's] mental RFC."). Similarly, the Court rejects Defendant's argument that the ALJ's RFC findings "adequately captured Plaintiff's mental limitations" because this argument is premised on Defendant's belief that the ALJ limited Plaintiff to unskilled work. Doc. 23 at 13-14. The ALJ, however, included no such limitation in the RFC. Finally, Defendant argues that any error in the ALJ's consideration of Dr. Hughson's opinion is harmless because the state agency psychologists, to whom the ALJ gave "some weight", considered Dr. Hughson's opinion and presumably accounted for her opinion in their opinions. Doc. 23 at 16. This argument is unpersuasive because, as set forth below, the ALJ's consideration of the state agency psychologists' opinions also was legally insufficient.

### B. State Agency Psychologists

Plaintiff asserts that the ALJ erred in her evaluation of non-examining state agency psychologist, Dr. Susan Daugherty, Ph.D. *See* Doc. 19 at 19-20. Conversely, Defendant argues that the ALJ properly evaluated and weighed Dr. Daugherty's opinion and that of the other non-examining agency psychologist, Dr. Henderson. *See* Doc. 23 at 16-17. Upon review of these non-examining opinions and the relevant law, the Court concludes that the ALJ committed legal error in her consideration of these opinions.

> After stating that she afforded partial weight to Dr. Hughson's opinion, the ALJ stated:
>
> The opinions of the non-examining State agency medical consultants are given *greater weight* as they are consistent with the evidence as a whole. The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled.' Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve *some weight*, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision.

AR 32 (emphasis added). The first issue with the ALJ's analysis is her failure to identify, either by name or by citation to the record, the non-examining opinions that she considered in formulating Plaintiff's RFC.

However, even if the Court were to infer that this portion of the decision included the non-examining agency psychologist opinions at issue on appeal, the ALJ's evaluation of the opinions was nonetheless inadequate. It is well established that "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004). Here, the ALJ indicated she was giving "greater weight" to the non-examining opinions because they were "consistent with the record as a whole." This conclusory assertion is inadequate because the ALJ failed to explain how the non-examining opinions were more consistent with the record than the opinions of the examining physicians. The ALJ also did not cite to the record to support this conclusory assertion, thereby preventing the Court from conducting the review necessary to determine whether the medical record substantiated the opinions of the non-examining agency consultants to whom the ALJ assigned greater weight. The Court concludes that these errors require remand for further consideration and weighing of the non-examining opinions using the proper legal standards.

## IV. CONCLUSION

Because the Court finds that the ALJ erred in her consideration of the opinion evidence regarding Plaintiff's mental impairments, the Court will grant Plaintiff's Motion (Doc. 19), reverse the Commissioner's decision denying Plaintiff benefits, and remand for further proceedings consistent with this Opinion. The Court will not address Plaintiff's remaining claims

11

of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

_____
UNITED STATES MAGISTRATE JUDGE
**Sitting by Consent**